UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00112-FDW

| | |
|---|---|
| PATRICIA ANDRADE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) ORDER <br> NANCY A. BERRYHILL, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | |

THIS MATTER is before the Court on Plaintiff Patricia Andrade's Motion for Summary Judgment (Doc. No. 13) filed July 30, 2018, Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 15) filed on September 28, 2018, and Plaintiff's Response (Doc. No. 17) filed on October 9, 2018. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Commissioner's Motion for Summary Judgment.

I. BACKGROUND

Plaintiff filed an application for disability benefits under Title II on October 27, 2014. (Tr. 13). After her application was denied initially and upon reconsideration (Tr. 104, 110, 114), Plaintiff requested a hearing (Tr. 117). A hearing was held on February 10, 2017. (Tr. 13, 31, 183). On April 5, 2017, the ALJ issued an unfavorable decision. (Tr. 10). Plaintiff's request for review by the Appeals Council was denied on January 10, 2018. (Tr. 1.).

1

The ALJ determined Plaintiff was not disabled since July 14, 2014. (Tr. 14). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that she had the severe impairments of sleep apnea, fibromyalgia, obesity, anxiety disorder, and depressive disorder. (Tr. 15). The ALJ determined that none of these impairments nor any combination of the impairments met or medically equaled a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 18). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry twenty pounds occasionally and ten pounds frequently. She would be able to sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday. She would be able to climb stairs and ramps only on an occasional basis and never ropes, ladders, or scaffolds. She would occasionally be able to stoop, crouch, kneel and crawl. She would have to avoid all exposure to cold temperatures, humidity, pulmonary irritants such as dust, fumes, odors, and gases. She would be able to perform, understand and carry out instructions, which would be consistent with simple tasks to the lower end of semi-skilled work, consistent with a SVP of three. She would be able to maintain concentration, persistence and pace in the performance of those tasks for two-hour increments over an eight-hour workday over a forty hour workweek.

(Tr. 21). The vocational expert ("VE") testified that the Plaintiff's past relevant work as a school bus driver exceeded Plaintiff's RFC and that Plaintiff was unable to perform the duties of her past relevant work. (Tr. 24). In response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the VE testified that an individual with these limitations could perform jobs in the national economy and listed jobs, which work exists in significant numbers in the national economy. (Tr. 24-25). Thus, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act. (Tr. 25).

Plaintiff has exhausted all administrative remedies and now appeals. (Doc. No. 1). In Plaintiff's motion for summary judgment, Plaintiff claims that the ALJ's decision should be reversed because the decision is not supported by substantial evidence, specifically because (1) the

ALJ did not explain findings and (2) the ALJ performed an inaccurate symptom assessment. (Doc. No. 14 at 4).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment

to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§

4

404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

"At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

III. ANALYSIS

Plaintiff's overarching assignment of error is that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence. (Doc. No. 14 at 4).

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); see also 20 C.F.R. § 404.1545(a)(1). SSR 96-8p requires that the ALJ assess the claimant's ability to perform work related functions listed in 20 C.F.R. § 494.1545(b), (c), and (d), including the ability

to: sit; stand; walk; lift; carry; push; pull; perform manipulative and postural functions; understand, remember, and carry out instructions; and respond appropriately to supervision, co-workers, and work pressures in a work setting. 1996 WL 374184 at *1. In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). The RFC is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7. If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] ... which evidence the ALJ found credible and why." Monroe, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). Simply put, this means an ALJ must "[s]how [his] work." Once the ALJ performs a function-by-function analysis, only then may an ALJ express the RFC of the exertional levels of light, medium, heavy, and very heavy. See SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

A. Fibromyalgia

Social Security Ruling (SSR) 12-2p governs the evaluation of fibromyalgia, see SSR 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012), and it explains that fibromyalgia is "a 'complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months,'" see Smith v. Colvin, C/A No. 1:14-4400-RBH, 2016 WL 1089302, at *5 (D.S.C. March 21, 2016). Fibromyalgia may be found when a person meets all three of the following criteria: "(1) a history of widespread pain, (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and (3) evidence that other disorders could cause these repeated manifestations were excluded." Id. at *6. SSR 12-2p provides that fibromyalgia should be considered in the RFC based on a longitudinal record whenever possible because symptoms can wax and wane such that a person may have "bad days and good days." Id. Courts have recognized that fibromyalgia symptoms are entirely subjective; there is no laboratory test to confirm the presence or severity of it; and physical examinations usually yield normal results such as a full range of motion, no joint swelling, normal muscle strength and neurological reactions. Id. at *7.

To determine the RFC, the ALJ considers those impairments supported by the objective medical evidence in the record as well as those impairments that are based on the claimant's subjective complaints. 20 C.F.R. §§ 404.1545, 404.1529, 416.945, 416.929. In evaluating a claimant's subjective complaints such as pain or fatigue, the ALJ employs a two-step process, see Social Security Ruling ("SSR") 96–7p, 1996 WL 374186 ("Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements"). (Tr. at 13-16.) "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological or psychological abnormalities and which could reasonably be

expected to produce the pain or other symptoms alleged.'" Craig v. Chater, 76 F.3d 585, 589, 594–95 (4th Cir.1996) (quoting 20 C.F.R. § 416.929(b)); see also 20 C.F.R. § 404.1529(b). If the first step is satisfied, as it was in this case, the ALJ "must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(3), 404 .1529(c)(3)).

In this case, the ALJ found at step two that Plaintiff's fibromyalgia was a severe impairment. (Tr. 15). In reviewing the ALJ's decision, the Court finds that the ALJ set forth the requisite analysis under SSR 12-2p,[1] and explained that he considered this regulation in determining that Plaintiff did not have a combination of impairments that met or medically equaled the severity of a listed impairment. (See Tr. 19). In supporting the RFC determination, the ALJ acknowledged that Plaintiff has reported diffuse body pain since 2005 and has been assessed as having fibromyalgia that "improved a little despite trials of multiple Nsaids, Tylenol, gabapentin, Flexeril, antidepressants, acupuncture, massage, and visits to a pain clinic." (Tr. 23). As to her subjective complaints, the ALJ addressed Plaintiff's pain. (Tr. 22-23). Further, the ALJ cited to the medical opinion of Dr. Deborah Jean Wald, M.D., Plaintiff's primary-care internist," that "sleep disturbance was the most common cause of diffuse fibromyalgia and if adequately treated, this was a good way to get rid of [Plaintiff's] pain." (Tr. 23). As to the medical opinions referenced in the decision, the ALJ's RFC determination that she could perform light work with some limitations is supported by the findings of the state agency consultants, as indicated by the ALJ.

---

[1] The Court notes that, as to step one of the SSR 12-2p analysis, the ALJ found that "[t]here is the uncertainty as to whether the claimant's fibromyalgia conforms to SSR 12-2p" because "[Plaintiff's] treating provider has suggested that the claimant's fibromyalgia is caused by underlying issues of anxiety, depression, and sleep apnea." (Tr. 19). However, the ALJ still proceeded to the analyze Plaintiff's fibromyalgia in his RFC determination.

8

(Tr. 24). While the ALJ acknowledged that the evidence, including Plaintiff's subjective complaints, "establishes the claimant suffers from a serious level of persistent pain and some physical functional limitations, the totality of the evidence before me does not reflect that she suffers from a level of pain or limitation commensurate with total disability." (Tr. 23).

Plaintiff erroneously relies on Dowell v. Colvin, No. 1:12-cv-1006, 2015 WL 1524767 (M.D.N.C. Apr. 2, 2015) and Sarcinella v. Berryhill, No. 8:16-cv-1216-MGL-JDA, 2017 WL 1710948 (D.S.C. Apr. 21, 2017) as her basis for remand. In Dowell, the Court determined that remand was in order, in part, because the Court could not discern whether the ALJ took into consideration the claimant's fibromyalgia related symptoms in arriving at the RFC. Dowell, 2015 WL 1524767 at *3. In Sarcinella, the Court similarly identified as reversible error the ALJ's failure to account for the subjective nature of fibromyalgia pain and fatigue in the RFC. Sarcinella, 2017 WL 1710948 at *15 ("Here, the ALJ discounted the medical evidence of record that Plaintiff suffered from fibromyalgia pain and fatigue and portions of medical opinions because they were based on subjective complaints and not objective physical findings. And, the Court notes that the ALJ relied on the lack of objective physical medical evidence to support his RFC determination which did not accommodate fibromyalgia pain and fatigue."). However, this Court finds that, unlike in Dowell and Sarcinella, the ALJ in this case considered both the objective medical evidence of Plaintiff's fibromyalgia pain and fatigue in the record, as well as Plaintiff's subjective complaints, in making the RFC determination, which is required by SSR 12-2p.

Ultimately, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456. It is the Court's task to determine whether the ALJ's opinion was supported by substantial evidence. Wood v. Berryhill, No. 5:14-cv-00171, 2017 WL 3710803, at *3 (W.D.N.C Aug. 28, 2017). The Court, however, cannot reweigh the evidence. Id. Upon

review of the ALJ's decision, the Court does not find any reversible error with respect to the ALJ's determination.

B. Obesity and Sleep Apnea

Plaintiff next argues that the ALJ did not adequately consider her obesity and sleep apnea and the effect of these impairments on her ability to perform basic work activities. (Doc. No. 14 at 16). Social Security Ruling (SSR) 02-1p instructs the ALJ to consider the impact of obesity throughout the sequential evaluation process and explain how conclusions regarding a claimant's obesity were reached. SSR 02-lp, 2010 WL 628049 at *3 (Sept. 12, 2002). Saulman v. Astrue, No. 1:09-cv-414, 2011 WL 4351587 (W.D.N.C. Sept. 16, 2011) is instructive regarding how a social security disability claimant's obesity bears upon the Act's five-step sequential analysis. As explained in Saulman,

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors . . . An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It also may affect ability to do postural functions, such as climbing, balance, stooping, and crouching . . . The ability to tolerate extreme heat, humidity, or hazards may also be affected. The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day.

Id. at *6.

Here, the ALJ considered Plaintiff's obesity and sleep apnea and found them to be severe impairments. (Tr. 15). The ALJ mentions Plaintiff's obesity at numerous times in the written decision, (Tr. 16, 19, 23), and specifically noted that he considered Plaintiff's obesity in combination with her other impairments, (Tr. 19). For example, at step three, the ALJ noted that Plaintiff suffered from obesity, addressed the effects of her obesity on her sleep apnea and periods of excessive daytime sleepiness, and evaluated Plaintiff's treatment regimen. (Tr. 16). At step four, the ALJ found that Plaintiff's combination of impairments, including obesity, did not meet or equal

the severity of an impairment described in Appendix 1 because Plaintiff remains fully weight bearing, does not suffer from significantly abnormal neurological symptoms, and has not suffered from organ damage. (Tr. 19). At step five, the ALJ found that while excess weight places additional stress and pressure on her joints and is a contributing factor to sleep apnea, Plaintiff has been able to lose some weight by walking. (Tr. 23). The ALJ considered the opinions of the state agency medical consultants that limited Plaintiff to light work. The ALJ further noted that no physician totally precluded Plaintiff from all gainful employment or found that Plaintiff had any work restrictions beyond those noted. Id.

Based on the combined impact of Plaintiff's physical and mental impairments, the ALJ determined that Plaintiff was restricted to light work with the enumerated restrictions, which sufficiently accounts for the noted limitations attributable to Plaintiff's obesity, such as limitations from pressure on her joints and daytime sleepiness. See Hooker v. Colvin, No. 5:15-cv-478-FL, 2016 WL 4940197, at *5 (E.D.N.C. Sept. 16, 2016) ("[T]he ALJ's sequential analysis satisfied the requirements of S.S.R. 02-1P, where the ALJ, at each step, considered evidence of plaintiff's obesity and described the effects of plaintiff's obesity, and where then the ALJ specifically accounted for the effects of plaintiff's obesity in determining plaintiff's RFC and functional limitations."); Williams v. Colvin, No. 4:15-cv-36-D, 2016 WL 4581292, at *10 (E.D.N.C. Aug. 2, 2016) (finding no error in the ALJ's consideration of Claimant's obesity where it was discussed at the relevant steps and the ALJ's RFC determination included limitations responsive to obesity). To the extent that the record supported restrictions due to her physical impairments including obesity and sleep apnea, the ALJ properly restricted Plaintiff to light work with further restrictions on climbing, stooping, kneeling, ability to perform tasks, and concentration, persistence, and pace. (Tr. 21). This case is distinguishable from the case cited by Plaintiff where the ALJ wholly failed

to consider the plaintiff's obesity. See Padgett v. Astrue, No. 7:11-cv-105-FL, 2012 WL 1884700, at *3 (E.D.N.C. May 2, 2012) (remanding case for further consideration and noting that the defendant conceded the ALJ did not consider the claimant's obesity); see also Gross v. Astrue, No. CIV.A. JKB-09-1456, 2010 WL 1328462, at *5 (D. Md. Mar. 26, 2010) (remanding case for further consideration where the ALJ did not discuss obesity in relation to the claimant's other impairments). Accordingly, the ALJ did not err in assessing Plaintiff's obesity.

C. Depression and Anxiety

Plaintiff next argues that the ALJ did not adequately consider her depression and anxiety. (Doc. No. 14 at 18). The Court disagrees.

The Court finds that the ALJ's evaluation of Plaintiff's depression and anxiety as being nondisabling is supported by substantial evidence. In support of his determination, the ALJ states,

> Mentally, the claimant has depression and anxiety symptoms that have increased in the context of worsening financial and ongoing chronic pain. The claimant has been treatment for a period and has had some mood swings. She has never been an inpatient at a psychiatric hospital since her alleged onset date and she is not actively suicidal or psychotic. Her cognitive skills are intact. Her mood is generally stable with some breakthrough symptoms. Mental health notes reflect periods of improvement as well as periods of exacerbated symptoms, typically clustered around periods of understandably stressful life situations – such as financial concerns as well as her other medical conditions. While her mental health treatment notes reflect some ongoing symptoms of psychiatric impairment, they do not reflect symptoms on a disabling level . . . In sum, I find that the foregoing evidence does not tend to support the claimant's allegations of a disabling impairment, as it reflects a history of somewhat effective and routine psychiatric treatment.

(Tr. 23). The Court concludes that the ALJ's findings as to the impact of Plaintiff's depression and anxiety is supported by "more than a mere scintilla" of evidence and that the ALJ applied the correct legal standard. In assessing Plaintiff's depression and anxiety, the ALJ cited to the medical evidence on record, including evidence that was both favorable and unfavorable to Plaintiff, and addressed the inconsistencies therein. The ALJ considered the frequency and duration of the

symptoms, as well as the factors that aggravate symptoms. The Court declines to reweigh evidence or substitute its judgment for that of the Commissioner regarding Plaintiff's GAF scores. The Court further notes that while GAF scores may be of considerable help to the ALJ in formulating the RFC, they have "no direct legal or medical correlation to the severity requirements" and are "not determinative of whether a person is disabled." Emrich, 90 F.Supp. at 491 (citations omitted). Accordingly, the Court concludes that the ALJ's evaluation is supported by substantial evidence.

D. Plaintiff's Symptoms

Plaintiff argues that the ALJ's evaluation of Plaintiff's symptoms was not supported by substantial evidence. The regulations lay out a two-step process in considering a claimant's statements and symptoms regarding the limitations caused by her impairments. See C.F.R. §§ 404.1529, 416.929; Craig, 76 F.3d at 593-96. First, the ALJ must determine that there is objective medical evidence showing the existence of a medical impairment which would reasonably be expected to produce the pain or alleged symptoms. 20 C.F.R. §§ 416.929(b), 404.1529(b). If the ALJ finds such, he must then evaluate the intensity and persistence of the Plaintiff's pain in order to determine whether or not the alleged symptomatic limitations will factor into the RFC. See 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1); Craig, 76 F.3d at 595 ("It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her work, must be evaluated.")

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). "The record should include a discussion of which evidence the ALJ found credible and why" because "[i]f the reviewing court has no way of evaluating the basis for the ALJ's decision, then the 'proper course,

13

except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)). However, "[i]n reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro, 270 F.3d. at 176 (quoting Craig, 76 F.3d at 589). The Court must give great deference to the ALJ's credibility determinations. See Keaton v. Colvin, No. 3:15-cv-588-MHL, 2016 WL 8452663, at *10 (E.D. Va. July 11, 2016) (citation omitted).

Turning to the instant case, the ALJ found at the first step in the above process that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 22). Thus, the only inquiry is whether the ALJ conducted a proper credibility evaluation and had sufficient basis for discrediting Plaintiff's statements concerning the effects of her alleged symptoms. Here, the ALJ found that Plaintiff's alleged limitations are not fully supported by the medical evidence and are inconsistent with some of her own actions. (Tr. 22). Plaintiff, however, argues that the ALJ's assessment of Plaintiff's treatment compliance, course of treatment, and daily activities is not supported by substantial evidence. (Doc. No. 14 at 18-25). Plaintiff's first critique of the ALJ's credibility determination, and the only argument in which the Court finds merit, is that the ALJ's assessment of her treatment compliance is not supported by substantial evidence. (Doc. No. 14 at 19). The Court agrees. Despite the ALJ's conclusion that Plaintiff has not always been compliant with CPAP (Tr. 22), the Court finds no evidence to support such conclusion (see Tr. 396, 414, 422, 440, 445, 446, 475). Nevertheless, while the Court finds that the ALJ's adverse credibility determination is based partially on an invalid reason, the Court finds that the ALJ's reliance on such reason was harmless error.

In social security cases, errors are harmless "so long as the ALJ's conclusion is supported by substantial evidence in the record and the claimant could not reasonably have been prejudiced by the error." Emrich v. Colvin, 90 F.Supp.3d 480, 488 (M.D.N.C. Mar. 2, 2015) (citing Tanner v. Comm'r of Soc. Sec., 602 Fed.Appx. 95, 101, 2015 WL 574222, at *5 (4th Cir. Feb. 12, 2015) (finding an ALJ's error to be harmless where it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability")); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ( "[A]n ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination.") (internal quotation marks omitted)); Huffman v. Colvin, No. 1:10-cv-537, 2013 WL 4431964, at *4 (M.D.N.C. Aug. 14, 2013) ("[E]rrors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error.").

First, the Court finds harmless error because the ALJ's conclusion is supported by substantial evidence in the record. The nature of a claimant's symptoms, the medical evidence on the record, the effectiveness of any medication she is taking, and her daily activities are all relevant factors when considering subjective symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In making his credibility determination, the ALJ discussed evidence of Plaintiff's daily activities that conflict with Plaintiff's subjective complaints (see Tr. 22); evaluated and weighed the opinion evidence (see Tr. 23); assessed Plaintiff's medications and treatments used to alleviate symptoms, including suggestions by Plaintiff's primary-care internist on ways to alleviate symptoms (see Tr. 23); addressed the effectiveness of Plaintiff's treatment (see Tr. 23); and found "the combined impact of the claimant's physical and mental impairments to be severe and limiting" but still allow for Plaintiff to be able to perform at the RFC of light work with the enumerated restrictions (see Tr. 24). The Court is not permitted to reweigh conflicting evidence, make its own credibility

15

determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589. Thus, the Court finds that in light of all the other reasons given by the ALJ for Plaintiff's lack of credibility and her RFC, there was substantial evidence supporting the ALJ's decision.

Second, the Court finds harmless error because Plaintiff could not reasonably have been prejudiced by the error. As noted above, no medical opinions on the record support Plaintiff's allegations of disabling pain. Plaintiff has not identified further restrictions the ALJ should have included in his RFC determination, apart from finding that Plaintiff is unable to work. Moreover, the ALJ's RFC determination that Plaintiff could perform light work with the enumerated restrictions was consistent with the state agency consultant determinations. (See Tr. 83, 97). Any failure on the part of the ALJ to perform a proper credibility assessment is "ultimately harmless as there is no reason to believe that but for the alleged error this case would resolve differently." Mullaney v. Colvin, No. 1:10-cv-967, 2014 WL 689755, at *9 (M.D.N.C. Feb. 20, 2014). Thus, the Court finds that remand is not warranted.

E. Mental RFC Assessment

Ultimately, the Court finds that the ALJ complied with SSR 96-8p. An ALJ may satisfy the "function-by-function" requirement by referencing a properly conducted analysis by State agency medical consultants. See Settlemyre v. Colvin, No. 5:14-cv-00199-MOC, 2015 WL 5457950, at *4 (W.D.N.C. Sept. 16, 2015); Linares v. Colvin, No. 5:14-cv-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96-8p.").

In the instant case, in addition to the medical evidence, the ALJ also considered the findings of Dr. Erik Purins, M.D. and Liesel S. Fischer, Psy.D., state agency examiners, who both found

that Plaintiff had moderately limited understanding and memory limitations and moderately limited ability to understand and remember detailed instructions but was not significantly limited in her ability to understand and remember very short and simple instructions. (Tr. 85-86, 98-99). The ALJ considered and agreed with the findings of the state agency examiners which assessed Plaintiff's understanding and memory limitation; her ability to carry out instructions; her ability to make work-related decisions; her ability to respond appropriately to supervisors; her ability to get along with co-workers; and her ability to respond to changes in the work setting. (Tr. 85-87, 98-99). However, the ALJ found that Plaintiff's social functioning was mild as opposed to being moderate. (Tr. 24). Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultants, as well as the evidence in the record, the ALJ's function-by-function analysis complied with SSR 96-8p. See Lemken v. Astrue, No. 5:07-cv-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010). Thus, the Court finds that the ALJ's decision is supported by substantial evidence and that remand is not appropriate. See Mastro v. Apfel, 270 F.3d. 171, 176 (4th Cir. 2001) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'") (citation omitted)

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 15) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: November 16, 2018

Frank D. Whitney
Chief United States District Judge